UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH E. FELDMAN,<br><br>    Defendant. | Case No: 2:17-cv-11292-LJM-DRG<br><br>District Judge Laurie J. Michelson<br>Magistrate Judge David R. Grand |

**BRIEF SUPPORTING SUMMARY JUDGMENT**

## INTRODUCTION

The United States submits this brief in support of its motion for summary judgment. The statement of facts that accompanies this brief is incorporated herein by reference.

## SUMMARY JUDGMENT STANDARD

A court must grant summary judgment when the material facts are undisputed, and on those facts, a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 320-326 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-257 (1986). Facts are material if their presence or absence will change the

outcome of the case.  *Id.*  The court determines whether material facts are disputed by reviewing information in the record identifying the admissible evidence pertaining to the matter at hand—stipulations, admissions, declarations, affidavits, interrogatory answers, depositions, business records, and the like.  *Id.*  A material fact is disputed only when the admissible evidence is such that reasonable minds could differ on the issue.  *Id.*  A showing of "some metaphysical doubt" regarding a material fact is not enough to defeat summary judgment.  *Matsushita Elec. Indus. Co.,* 475 U.S. at 586-587.  Naked allegations in the pleadings or otherwise are insufficient to establish a factual dispute for they are not admissible evidence.  *Id.*

## ARGUMENT

I.  **THE UNITED STATES' DETERMINATION OF JOSEPH FELDMAN'S INCOME TAX LIABILITIES IS PRESUMPTIVELY CORRECT.**

Absent clear evidence to the contrary, the courts presume that government personnel, such as employees of the Internal Revenue Service ("IRS"), have discharged their duties correctly.  *See, e.g., United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926); *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).  This presumption of correctness generally extends to the creation, maintenance, and accuracy of public records, such as IRS transcripts of account, which document tax assessments, accruals, payments, balances, and related matters.  *See, e.g., United States v. Fior*

*D'Italia, Inc.*, 536 U.S. 238, 242-243 (2002); *Roberts v. Comm'r*, T.C.M. (RIA) 2004-100, 87 T.C.M. (CCH) 1225, 2004 Tax Ct. Memo LEXIS 101 (U.S. Tax Ct. 2004); *United States v. Walton*, 909 F.2d 915 (6th Cir. 1990); *Medchem (P.R.), Inc., v. Comm'r,* 295 F.3d 118, 123 (1st Cir. 2002).

In tax litigation under the Internal Revenue Code ("Code"), this presumption of correctness typically allows the United States to meet its burden of proof on the extent of tax liabilities by simply putting in account records documenting the government's tax determination, associated penalties, payments on the liability, account balances, and so on. *See, e.g., Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994); *United States v. Johnson*, 355 Fed. Appx. 963; 965, 104 A.F.T.R.2d (RIA) 7751 (7th Cir. December 14, 2009); *United States v. Williams*, 110 A.F.T.R.2d (RIA) 6199 (S.D. Ind. 2012).[1] From there, the taxpayer bears the burden to prove that a

---

[1] The cases supporting this black-letter principle are legion. Here is a sampling of those decided in the other eleven federal circuits: *United States v. Rexach*, 482 F.2d 10, 16-17 (1st Cir. 1973); *United States v. McCombs*, 30 F.3d 310, 319 (2nd Cir. 1994) ("Our cases make clear, therefore, that the presumption of correctness of a tax assessment, which serves to place the burden of production as well as the burden of persuasion on a plaintiff taxpayer who challenges section 6672 tax liability by seeking a refund of his partial payment, applies with equal force in a collection action where the taxpayer is a defendant."); *Anastasato v. Commissioner*, 794 F.2d 884, 887 (3rd Cir. 1986) ("[T]he burden of production as well as the ultimate burden of persuasion is placed on the taxpayer."); *Cebollero v. Commissioner*, 967 F.2d 986, 990 (4th Cir. 1992) ("It is well established that as a general matter, the Commissioner's determination of deficiency is presumed correct, and the taxpayer bears 'the burden of proving it wrong.'"); *United States v. Caraway*, 101 A.F.T.R.2d (RIA) 2280 (W.D. Tex. 2008) ("[T]axpayer 'bears the burdens both of production and persuasion' . . . ."); *United States v. Walton*, 909 F.2d 915, 918 (6th Cir. 1990) ("Generally, the taxpayer will bear not only the burden of production, but also the burden of proving by a preponderance of the evidence that the Commissioner's assessment is 'arbitrary and excessive.'"); *Honey v. United States*, 963 F.2d 1083, 1087 (8th Cir. 1992) ("Once the IRS makes an assessment of liability, the taxpayer bears the burdens of production and persuasion as to all issues . . . ."); *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990) ("After the government satisfies its initial burden by introducing the assessment under section 6672, the taxpayer then has the burden of proof with respect to both his own claim and the

liability figure other than that presented by the government is correct. *Id.* Both burdens, production and persuasion, rest with the taxpayer. *Id.*

Interest accrues on federal tax liabilities, including those at issue here. *See* I.R.C. §§ 6601, 6621-6622. This interest accrual is a mathematical calculation determined as a matter of law, not a historical fact requiring evidentiary proof. *See, e.g., Ghandour v. United States*, 37 Fed. Cl. 121, 124-127 (1997); *United States v. Sarubin*, 507 F.3d 811, 816-817 (4th Cir. 2007); *United States v. Schroeder,* 900 F.2d 1144, 1150 n.5 (7th Cir. 1990); *United States v. Hammon*, 277 Fed. Appx. 560, 569, 2008 U.S. App. LEXIS 10027 (6th Cir. May 6, 2008).

Allocating the burden of proof in this way encourages accurate record keeping by taxpayers who, for the most part, have exclusive possession of the information needed to calculate the nature and extent of taxes due under the Internal Revenue Code.[2] Congress has expressly placed the obligation

---

government's counterclaim."); *Dye v. United States*, 121 F.3d 1399, 1408 (10th Cir. 1997) ("[I]n an action to recover taxes paid, the taxpayer has the burden to show not merely that the IRS's assessment was erroneous, but also the amount of the refund to which the taxpayer is entitled."); *United States v. Leemon*, 108 A.F.T.R.2d (RIA) 5035 (2011) ("The United States' tax assessments are presumptively correct as a matter of law and the Leemons have failed to present any evidence to rebut any of the amounts due."); *Brewster v. Commissioner*, 607 F.2d 1369, 1374-1375 (D.C. Cir. 1979) ("A presumption of correctness accompanies a determination by the Commissioner. . . . This places the burden of proceeding on the taxpayer . . . , and thereafter the burden of persuasion rests with the taxpayer.").

[2] *See, e.g.,* Bryan T. Camp, *Tax Administration As Inquisitorial Process and the Partial Paradigm Shift in the IRS Restructuring and Reform Act of 1998*, 56 Fla. L. Rev. 1, 15-16 (January 2004) ("Both commentators and courts have long recognized . . . information asymmetry as a central justification for why the taxpayer bears the burden of proof in tax controversies . . . ."); Leo P. Martinez, *Tax Collection and Populist Rhetoric: Shifting the Burden of Proof in Tax Cases*, 39 Hastings L.J. 239, 280 (1988) ("A tax system in which the burden of proof is borne by the government does little to encourage the preservation of records held by the taxpayer; on the contrary, such a system would lend itself to easy concealment of

of maintaining complete financial records, performing accurate financial accounting, and preparing accurate tax returns on taxpayers, not the United States.[3] Treasury Regulation § 1.6001-1, for example, describes the record-keeping requirement for those subject to income tax as follows:

> (a)   In general. . . . [A]ny person subject to [income ] tax under Subtitle A of the Code . . . shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information.
>
> . . . .
>
> (e)   Retention of records.  The books or records required by this section shall be kept at all times available for inspection by authorized internal revenue officers or employees, and shall be retained so long as the contents thereof may become material in the administration of any internal revenue law.

Our tax system depends upon self-reporting out of practical necessity. *See, e.g.*, *United States v. Carlson*, 617 F.2d 518, 520-523 (9th Cir. 1980); *United States v. Paepke,* 550 F.2d 385, 388-391, 393-394 (7th Cir. 1976);

---

tax obligation."); *Church of Scientology v. Commissioner,* 83 T.C. 381, 468 (1984) ("Placing the burden of proof on the taxpayer is . . . justified on the basis that the facts and figures on which tax liability rests are peculiarly within the taxpayer's knowledge.").

[3] *See, e.g.*, I.R.C. § 6001 (regulations on recordkeeping and returns generally); I.R.C. § 6011 (return requirements generally); I.R.C. § 6012 (income tax returns); I.R.C. § 6017 (self-employment tax returns); I.R.C. § 6051 (W-2 Forms); Treas. Reg. § 1.6001-1 (income tax records); Treas. Reg. § 1.6011-1 (income tax returns generally); Treas. Reg. § § 1.6012-1 (individual income tax returns); Treas. Reg. § 1.6012-2 (corporate income tax returns); Treas. Reg. § 1.6017-1 (self-employment tax returns); Treas. Reg. § 1.6031(a)-1 (partnership income tax returns) Treas. Reg. § 1.6041-1 (information returns income payments); Treas. Reg. § 1.6041-2 (W-2 Forms); Treas. Reg. § 31.6001-2 (FICA tax records); Treas. Reg. § 31.6001-4 (unemployment tax records); Treas. Reg. § 31.6001-5 (wage withholding records); Treas. Reg. § 31.6011(a)-1 to (a)-4 (payroll tax returns).

Danshera Cord, Tax *Protestors and Penalties: Ensuring Perceived Fairness and Mitigating Systemic Costs*, 2005 BYU L. Rev. 1515, 1522-1523 (2005); Judson L. Temple, *Rethinking Imposition of a Legal Duty to Correct Material Tax Return Errors*, 76 Neb. L. Rev. 223, 232 (1995); Richard B. Malamud & Richard O. Parry, *It's Time to do Something About the Tax Gap*, 9 Hous. Bus. & Tax L.J. 1 (2008).  The government acting as every taxpayer's record keeper, accountant, and return preparer would be a colossal, if not impossible, administrative burden.  *Id.*

To meet its burden of production, the United States' determination that internal revenue tax is due does not need to be flawless--calculating every relevant figure with exactitude and giving the taxpayer the benefit of every available exemption, deduction, credit and the like under the Code.  *See, e.g., United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 240-252 (2002); *Carson v. United States*, 560 F.2d 693 (5th Cir. 1977); *United States v. Stonehill,* 702 F.2d 1288 (9th Cir. 1983); *Mendelson v. Commissioner*, 305 F.2d 519, 520-523 (7th Cir. 1962).  A reasonable fact basis for the government's position is all that is required.  *Id.*

A high degree of accuracy under the Internal Revenue Code is the norm for determinations of income and other internal revenue tax by the United States regarding taxpayers who fulfill their legal obligation to maintain

complete financial records, perform accurate financial accounting, and prepare accurate tax returns. Most tax assessments by the IRS are based upon returns prepared and filed by taxpayers. *See, e.g., Cord,* 2005 BYU L. Rev. at 1522-1523.

A high degree of accuracy under the Internal Revenue Code may not be possible for determinations of internal revenue tax by the United States regarding taxpayers who breach their record keeping, accounting, and return obligations under the Code. The factual data needed for such accuracy is unavailable because the taxpayer has concealed, destroyed, or falsified records or returns. Even in these challenging situations, however, the courts have routinely held that tax determinations by the United States, although imperfect, carry a presumption of correctness as long as the government can show some reasonable fact basis for its position. *See, e.g., Fior D'Italia, Inc.*, 536 U.S. at 240-252 (estimating unreported tips for a restaurant by multiplying average tip rate by total receipts); *Carson*, 560 F.2d at 694-700 (estimating 20 weeks of a bookmaker's betting volume based upon one week of betting slips when all other slips were destroyed); *Stonehill,* 702 F.2d 1290-1297 (estimating millions in undocumented income by changes in taxpayer net worth); *Mendelson*, 305 F.2d at 520-523 (7th Cir. 1962)

(estimating a waitress's unreported tip income by multiplying average tip rate by average sales per waitress).

A principle running through the cases upholding tax determinations based upon estimates is that a taxpayer's culpability in breaching the record keeping, accounting, and/or return obligations under the Internal Revenue Code justifies a less than perfect tax calculation. *Id.* In *United States v. Stonehill,* for example, the Ninth Circuit Court of Appeals stated the following:

> These conclusions are buttressed by the nature of this case. The Commissioner was forced to use the imprecise net worth method of estimating income because the taxpayers' records were unreliable and did not accurately reflect income. Some error is unavoidable in such a reconstruction. Errors arising from the taxpayers' attempts to conceal their income will rarely rebut the overall presumption of correctness. Skillful concealment must not raise an insurmountable barrier to proof.

*Stonehill*, 702 F.2d at 1296 (citations omitted). In *Webb v. Comm'r*, 394 F.2d 366 (5th Cir. 1968), a case where a liquor store owner's income was estimated because his business records were grossly incomplete, the Fifth Circuit Court of Appeals described this culpability concept as follows:

> We recognize that the absence of adequate tax records does not give the Commissioner carte blanche for imposing Draconian absolutes. But such absence does weaken any critique of the Commissioner's methodology.
>
> Arithmetic precision was originally and exclusively in Webb's hands, and he had a statutory duty to provide it. He did not have to add or subtract; rather, he had simply to keep papers and data for others to mathematicize. Having defaulted in his duty, he

> cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails.

*Webb*, 394 F.2d at 373 (citations omitted).

Another principle running through the tax-estimation cases is that an alternative estimation method proposed by the taxpayer will not displace that employed by the IRS unless the taxpayer can show that the alternative is substantially more accurate. *See, e.g., Fior D'Italia, Inc.*, 536 U.S. at 240-252; *Carson*, 560 F.2d at 694-700; *Stonehill,* 702 F.2d 1290-1297; *Mendelson*, 305 F.2d at 520-523; *Webb*, 394 F.2d at 372-373. The courts are particularly skeptical of alternative estimation methods that rely on taxpayer credibility to a greater degree than the method employed by the IRS when the taxpayer's credibility is suspect due to his or her breach of the record keeping, accounting, and/or return obligations under the Code. *Id.* In *Webb*, for example, the Fifth Circuit Court of Appeals stated as follows:

> For Webb the percentage mark-up method was the most reasonable means of computing income because his cost of sales in each taxable year was known with certainty. In comparison, net worth or bank deposit computations would lack any known figure because Webb transacted a substantial amount of his liquor business in cash, and he readily commingled cash flowing to and from personal and business expenses. The supposed disparity between the percentage mark-up and net worth determinations is based almost exclusively on Webb's own

> testimony concerning his property, expenses, and money hoards.

*Webb*, 394 F.2d at 372-373. In *Fior D'Italia, Inc.*, the United States Supreme Court described this accuracy principle in this way:

> Nor has Fior D'Italia convinced us that individualized employee assessments will inevitably lead to a more "reasonable" assessment of employer liability than an aggregate estimate. After all, individual audits will be plagued by some of the same inaccuracies Fior D'Italia attributes to the aggregate estimation method, because they are, of course, based on estimates themselves. Consequently, we cannot find that the aggregate method is, as a general matter, so unreasonable as to violate the law.

*Fior D'Italia, Inc.*, 536 U.S. at 248.

The presumption of correctness has attached to the income tax and penalty assessments against Joseph Feldman for the years 2001, 2002, and 2015. The assessments for years 2001 and 2002 are based on information returns filed by third-parties documenting income received by Mr. Feldman. Determining Mr. Feldman's income tax for 2001-2002 based upon information returns was reasonable given his unlawful refusal to file valid and complete income tax returns for these years. The assessment for 2015 is based upon the return filed by Mr. Feldman. All of the information supporting the United States' motion for summary judgment is admissible in evidence. The IRS records are admissible under Fed. R. Evid. 803(6). Testimony from IRS personnel is admissible under Fed. R. Evid. 406, 601-602, 803(6).

## II.    JOSEPH FELDMAN CANNOT OVERCOME THE PRESUMPTION OF CORRECTNESS BECAUSE HE LACKS OPPOSING EVIDENCE.

Joseph Feldman cannot overcome the presumption of correctness that applies to the income tax assessments for 2001, 2002, and 2015, because he lacks admissible evidence to the contrary.  Regarding 2001 and 2002, to rebut the presumption of correctness, Mr. Feldman must come forward with an alternative calculation method and alternative liability figures that are substantially more accurate than those presented by the government.  Mr. Feldman has had over 14 years to do this, and he has produced nothing.  The 2015 assessment is based upon and consistent with Mr. Feldman's return, so in effect, he has conceded the accuracy of the 2015 assessment.

## CONCLUSION

For the foregoing reasons, the United States urges this Court to grant its motion for summary judgment.

                          Respectfully submitted,

                          DAVID A. HUBBERT
                          Deputy Assistant Attorney General
                          Tax Division U.S. Dept. of Justice

| *Local Counsel:* | /s/ L. Steven Schifano |
|---|---|
|  | _____ |
| DANIEL L. LEMISCH | L. Steven Schifano, Trial Attorney |
| Acting U.S. Attorney | U.S. Department of Justice Tax Division |
|  | P.O. Box 55, Ben Franklin Station |
| PETER CAPLAN | Washington, D.C. 20044 |
| Assistant U.S. Attorney | (202) 307-6575 Phone |
|  | (202) 514-5238 Fax |
|  | l.steven.schifano@usdoj.gov |
|  | Wisconsin Bar # 1019644 |
|  | Counsel for the United States |